[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 1705
This case comes to this court as a limited contested dissolution of marriage. The parties were married on March 5, 1988 in Gloucester, Massachusetts. The wife's maiden name was Tania Ortiz. The plaintiff was a resident of the State of Connecticut for at least a year prior to the date of this dissolution decision. The parties have no minor children issue of the marriage and neither of the parties have received state aid. This is a second marriage for both the parties. The wife is age 43 and the husband is age 48. The wife has two children from a previous marriage. The husband has three children from a previous marriage.
The wife is currently unemployed and has a high school education but is attending Norwalk Community College and is attending dog grooming school. She is working towards a degree in respiratory therapy. She contemplates that she will have the degree in three years. She needs approximately 70 credits and needs about $6,500 to complete the educational expenses. Her course in respiratory therapy will take three years. She believes she can start out in that area at a salary of $25,000 (that is based on what she knows about the market today). She has indicated that because she was compelled to relocate to Connecticut in October of 1991, and had to up-root her youngest daughter, she would like some time to stay in Connecticut. She wants to have an opportunity to have her daughter finish high school. The daughter would graduate from New Canaan High School in June of 1994. Her rental obligations for a three bedroom house, nothing too fancy, she indicated would be somewhere between $1,950 and $2,400 per month.
The husband graduated from Gonzaga University with a degree in accounting and has a masters degree. He has been with GTE from 1975 through the present. During the course of time that he was there, he became the Chief Financial Officer for the International Lighting Division. He started with a base salary of $82,000 and left that position with a salary of $110,000. His current base salary is $110,000.
The court finds that the wife made no substantial contribution to the acquisition of any of the assets of the parties as they CT Page 1706 presently exist.
The marriage of the parties has been difficult.
At the time the parties were married, the husband had rheumatoid arthritis which affected his entire body, primarily his knees and joints. At the time of the marriage he was taking gold shots. On the honeymoon he did not feel well and told his wife that the gold shots were not working. His disability became so bad that in approximately June of 1989 he had both knees completely replaced. In approximately August of 1989 when his knee was not healing he was diagnosed as having cancer. In 1990 he was stricken with Scleritis (which is an infection of the eyes) and he is being treated with drugs for that condition. In February of 1990 the husband was told he was in remission from his cancer.
The wife began a dissolution of marriage action in Massachusetts in March of 1991. The parties filed a stipulation of dismissal marked as Defendant's Exhibit H which stipulation of dismissal was dated approximately September 13th of 1991. Under that agreement the parties set forth an agreement that would be binding on them at all times during their marriage.
In October of 1991 the parties relocated to Connecticut and the husband purchased a home in joint names for $485,000 with a down payment of $150,000. In January of 1992 the husband filed for divorce.
In most divorce cases, the court is faced with conflicting testimony on some issues. This case was unusual in that, both of the parties pointed fingers at the other as to who caused the break down of the marriage telling absolutely conflicting stories. This court has listened to the parties and finds that the wife's testimony concerning the causes of the breakdown is more credible.
The parties were divorced for a substantial period of time before they intermarried. The husband had been divorced for approximately 16 years and the wife for approximately 9 years. On the return flight from their honeymoon in Hawaii the husband laid down what the wife described as the rules and regulations. He indicated to her that her children were her responsibility and that meant that she would have to pay for their restaurant expenses, movie theater tickets and the like. She was allowed to buy clothing only two times per year, in the Spring and in the Fall and he was to approve the outfits. He indicated to her that she was to CT Page 1707 wear only white cotton undergarments. The beginning of her controlled life was at hand. On the return from the honeymoon the husband regularly bed-wet during the night two or three times per week. His rheumatoid arthritis became disabling. He could not address without her help. Throughout his medical problems the wife stood by him dutifully. She drove him to work, she took care of all of his needs, she stayed home to be his caretaker. The testimony given by the wife indicates that the relationship of the parties was not one of husband and wife, but rather that of master and servant.
The wife took care of the husband, and she took care of the house. The husband controlled the finances and gave her $225 in cash less $50 which she had to give to him for his weekly expenses. The rest was for her to run the household and her own gas. The record is replete with incidents of the wife living to take care of the husband from the day she married him. The wife appropriately summed up her role in the marriage and the emotional and physical suffering that she had as the result of her role when she said "we feel sorry for the one in the wheel chair, but we forget about the one pushing it." She testified that in April of 1989 she had a hernia from lifting her husband. She was in the hospital for three days, when she came home there was no recuperation, for when she got home he needed her attention.
The court finds that the cause of the break down of the marriage was the husband's attempt at complete control of the wife and his emotional abuse of her.
The court has listened to the witnesses and reviewed all of the exhibits in the case. In addition, the court has taken into consideration all of the criteria set forth in 46b-81, the assignment of property and transfer of title statute; 46b-82, the alimony statute; 46b-62, the attorney's fees statute; and has taken into consideration all of the court's equitable powers in arriving at its decision. In addition, the court has reviewed all of the claims for relief and trial briefs filed by the attorneys. In addition, the court has reviewed the financial affidavits of the parties.
In entering these orders, the court has taken into consideration the stipulation of dismissal entered into by and between the parties in the commonwealth of Massachusetts. Both lawyers have stipulated on the record that this court is not bound by the agreement. Accordingly, the court has not bound itself by CT Page 1708 that agreement.
The court has reviewed Exhibit I. It shows the husband's basic pension plan. If he continues to work at GTE until February 28, 1998, at the same salary, he will be eligible for early retirement at age 53. He could then receive $323,446 in lump sum or a monthly sum ranging from $2,553 to $2,716. If he were to stay until normal retirement, which would be October 31, 2009 at age 65, and he were to stay at the same salary, he would have a lump sum payment of $419,264. His monthly retirement would range depending upon which option he selected, between $3,834 per month and $4,268 per month. These amounts are exclusive of social security payments.
In rendering this decision, the court has taken into consideration the mandate in O'Neill v. O'Neill, 13 Conn. app. 300 at pg. 311 which indicates, "we hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's (in O'Neill the plaintiff was the wife), contributions to the marriage, including homemaking activities and primary caretaking responsibilities". This court has taken into consideration that mandate in this case.
(1) The court grants a dissolution of marriage on the grounds of irretrievable breakdown.
(2) The husband shall execute a Qualified Domestic Relations Order transferring to the wife the sum of $100,000 from his 401K Plan into an IRA to be established by the wife. The court shall retain jurisdiction until said QDRO has been duly approved and accepted by the Plan Administrator and submitted to the court for approval.
(3) The husband's base salary is approximately $110,000. His W2's for 1991 included one for $59,898 approximately as shown on Exhibit A and the other one was for $116,085. These two items represent the wages salaries and the like as shown on line 7 of the 1991 pro forma income tax shown as Defendant's Exhibit G. The husband's income for 1992 shown on Defendant's Exhibit W was $175,052.49. The base salary was $110,000 for 1992. The court orders the husband to pay to the wife alimony, which alimony is to end on the happening of the first of the following: either parties death, the wife's remarriage, cohabitation under the statute or 4 years from the date of the dissolution. The husband is to pay to the wife the annual sum of $24,000 for the first year. That amount CT Page 1709 is to drop to $18,000 per year thereafter until terminated. Said amounts to be paid monthly on the first of said month.
(4) The husband is to cooperate with the wife in order to insure she receives the COBRA benefits for the maximum time available. The cost of that COBRA benefit is to be paid by the wife.
(5) The husband is to make a contribution towards the wife's attorney's fees in the sum of $20,000. This order is necessary in order not to undermine the other financial orders of this decision. The husband is to make a contribution towards the Certified Public Accountant fees in the sum of $2,000. This order is necessary in order not to undermine the other financial orders of this decision.
(6) The husband is to carry life insurance for the benefit of the wife in the amount of $250,000 with the wife as irrevocable beneficiary until the husband's obligation to pay alimony ends.
(7) The wife shall retain the 1991 Honda automobile.
(8) The wife shall retain her daughters' bedroom sets and her bedroom set. All of the other items that the parties brought with them to the marriage or were received from their families shall be their own personal property. All of the property that is their own personal property such as jewelry, clothing and the like shall be their sole and exclusive property. All items accumulated during the course of the marriage shall be divided equally between the parties. The parties shall attempt to resolve the matter between themselves. If they cannot resolve the matter, it is referred to Family Relations for mediation. If they are unable to resolve the matter at Family Relations then the item or items are ordered sold and the proceeds divided equally between them.
(9) The court finds that the wife's testimony as to the value of the marital premises is the more credible. The court finds that the value of the house at 923 New Norwalk Road, New Canaan, Connecticut jointly owned by the parties is worth $545,000. There are encumbrances on the property as set forth on the husband's financial affidavit consisting of a mortgage of $322,455 and a home equity of $72,648. The total encumbrances equal $395,103. Therefore, the equity in the house is $149,897 or approximately $150,000. The husband shall have the option of one of the following: CT Page 1710
(1) He may pay the wife within six months from the date of this decision the sum of $75,000 representing her one-half interest and she shall simultaneous with the payment therein, quit claim her interest to the house. The husband shall be responsible for all capital gains taxes if any as a result of this transfer.
(2) The husband may immediately place the premises for sale and the net proceeds after the cost of the sale shall be divided equally between the parties. Costs of sale shall include the necessary expenses for broker, real estate conveyance tax, adjustments and other like items as are the custom in New Canaan to be paid out of the sale of the property including the then current balances on the mortgages. The home equity is not to be increased by any further take-downs of principal during the time the property is for sale. All capital gains taxes due if any, as a result of that sale shall be the responsibility of the husband and he shall hold the wife harmless.
(3) The wife shall vacate the home within 30 days of the date of this decree provided no appeal has been taken. If any appeal is taken, she may remain in the premises while the appeal is pending or until further order of this court. This court keeps jurisdiction over the sale of the real estate.
(10) The wife shall have sole ownership of the two dogs.
(11) The husband, if he keeps the premises, shall assume and be responsible for and shall indemnify and hold the defendant harmless from any and all claims in regard to said mortgages.
(12) The court specifically makes no orders concerning joint tax returns since the parties have expressed their intention on the record.
(13) All items of personal property listed on the parties' financial affidavits not expressly addressed herein shall be the sole and exclusive property of the party on whose affidavit the property is shown.
(14) Each of the parties shall be responsible for their individual debts as reflected on their financial affidavits on file with the court and each shall indemnify and hold the other harmless in regard to said debt except as those debts are expressly addressed herein. CT Page 1711
(15) All other claims for relief not expressly addressed herein have been rejected by the court.
KARAZIN, J.